Case No. 26-60240

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

AMERICAN ENERGY ASSOCIATION; NATURAL RESOURCES DEFENSE COUNCIL, INCORPORATED; DEFENDERS OF WILDLIFE; NATIONAL WILDLIFE FEDERATION; NATIONAL PARKS CONSERVATION ASSOCIATION; FLORIDA WILDLIFE FEDERATION; LOUISIANA WILDLIFE FEDERATION; TEXAS CONSERVATION ALLIANCE,

*Petitioners*,

v.

DOUG BURGUM, Secretary of the Interior, in his official capacities as Chair and Member of the Endangered Species Committee; BROOKE ROLLINS, Secretary of Agriculture, in her official capacity as a Member of the Endangered Species Committee; DANIEL DRISCOLL, Secretary of the Army, in his official capacity as a Member of the Endangered Species Committee; PIERRE YARED, Acting Chair of the Council of Economic Advisors, in his official capacity as a Member of the Endangered Species Committee; LEE ZELDIN, Administrator of the Environmental Protection Agency, in his official capacity as a Member of the Endangered Species Committee; NEIL JACOBS, Administrator of the National Oceanic and Atmospheric Administration, in his official capacity as a Member of the Endangered Species Committee; PETE HEGSETH, Secretary, U.S. Department of Defense,

*Respondents.*

---

On Petitions for Review of an Order of the Endangered Species Committee

---

# THE AMERICAN PETROLEUM INSTITUTE'S
# MOTION TO INTERVENE

Jason T. Morgan
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, Washington 98101
T: (206) 624-0900
F: (206) 386-7500
jason.morgan@stoel.com

Tiffany Wang
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, Washington 98101
T: (206) 624-0900
F: (206) 386-7500
tiffany.wang@stoel.com

*Counsel for Proposed Intervenor-Respondent American Petroleum Institute*

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of the case. These representations are made in order so that the judges of this Court may evaluate possible disqualification or recusal.

1. Petitioners

    American Energy Association

    Natural Resources Defense Council, Incorporated

    Defenders of Wildlife

    National Wildlife Federation

    National Parks Conservation Association

    Florida Wildlife Federation

    Louisiana Wildlife Federation

    Texas Conservation Alliance

2. Attorneys for Petitioners

    James Conde, Boyden Gray, P.L.L.C.

    Kate Desormeau, Natural Resources Defense Council

    Jane P. Davenport, Defenders of Wildlife

    Catherine Wannamaker, Southern Environmental Law Center

3. Respondents

    Doug Burgum, Secretary of the Interior, in his official capacities as Chair and Member of the Endangered Species Committee

Brooke Rollins, Secretary of Agriculture, in her official capacity as a Member of the Endangered Species Committee

Daniel Driscoll, Secretary of the Army, in his official capacity as a Member of the Endangered Species Committee

Pierre Yared, Acting Chair of the Council of Economic Advisors, in his official capacity as a Member of the Endangered Species Committee

Lee Zeldin, Administrator of the Environmental Protection Agency, in his official capacity as a Member of the Endangered Species Committee

Neil Jacobs, Administrator of the National Oceanic and Atmospheric Administration, in his official capacity as a Member of the Endangered Species Committee

Pete Hegseth, Secretary, U.S. Department of Defense

4. <u>Attorneys for Respondents</u>

Christopher Anderson

Dimple Chaudhary

Robert Nolan Stander

5. <u>Proposed Intervenor-Respondent</u>

American Petroleum Institute ("API")

6. <u>Attorneys for Proposed Intervenor Respondents</u>

Jason T. Morgan, Stoel Rives LLP

Tiffany Wang, Stoel Rives LLP

**Federal Rule of Appellate Procedure 26.1:**

API discloses as follows:

API is a 501(c)(6) organization that has no parent corporation, and there is no publicly held corporation that owns ten percent (10%) or more of API.

/s/ Jason T. Morgan

- 3 -

Jason T. Morgan

*Counsel for Proposed Intervenor-
Respondent American Petroleum Institute*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

I. INTRODUCTION AND BACKGROUND ........................................1

    A.    Regulatory Context and Background ......................................2

        1.    Section 7 of the ESA and the Exemption Process ....................2

        2.    The Oil and Gas Program in the Gulf .....................................4

        3.    Gulf Oil and Gas Program Biological Opinions .......................5

        4.    The Committee's Exemption ....................................................7

    B.    API's Interest ...........................................................................9

II. ARGUMENT ...............................................................................12

    A.    API is Entitled to Intervene as of Right. ................................12

        1.    API Has Timely Moved for Intervention..............................13

        2.    API Possesses a Cognizable Interest Relating to the Subject Matter of This Action...................................................14

        3.    The Disposition of This Action May Impair or Impede API's Interests....................................................................17

        4.    API's Interest Will Not Be Adequately Protected by Respondents. ..................................................................18

    B.    In the Alternative, API Qualifies for Permissive Intervention...........20

CERTIFICATE OF COMPLIANCE.................................................24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Chevron USA Inc. v. Plaquemines Par., Louisiana,*
608 U.S. ----, 146 S.Ct. 1052 (2026) ......................................................................16

*Ctr. For Biological Diversity v. Burgum,*
No. 24-cv-990 (D.D.C.) ...............................................................................................6, 11

*Ctr. for Sustainable Econ. v. Jewell,*
779 F.3d 588 (D.C. Cir. 2015).................................................................................11

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
528 U.S. 167 (2000)...................................................................................................13

*Heaton v. Monogram Credit Card Bank of Ga.,*
297 F.3d 416 (5th Cir. 2002) ....................................................................................20

*United States ex rel Hernandez v. Team Fin., L.L.C.,*
80 F.4th 571 (5th Cir. 2023) .....................................................................................21

*Hunt v. Washington State Apple Advert. Comm'n,*
432 U.S. 333 (1977)...................................................................................................13

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of*
*Am., AFL-CIO, Loc. 283 v. Scofield,*
382 U.S. 205 (1965)..............................................................................................12, 20

*John Doe No. 1 v. Glickman,*
256 F.3d 371 (5th Cir. 2001) ..............................................................................14, 17, 19

*La Union del Pueblo Entero v. Abbott,*
29 F.4th 299 (5th Cir. 2022) ................................................................................17, 18

*Nat'l Lime Ass'n v. E.P.A.,*
233 F.3d 625 (D.C. Cir. 2000)..................................................................................13

*Ramsey v. Kantor,*
96 F.3d 434 (9th Cir. 1996) .......................................................................................4

*Sierra Club et al. v. Nat'l Marine Fisheries Serv. et al.*,
  No. 8:20-CV-03060 (D. Md.) ...............................................................11

*Sierra Club v. City of San Antonio*,
  115 F.3d 311 (5th Cir. 1997) ...............................................................19

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ........................................................passim

*Sierra Club v. Glickman*,
  82 F.3d 106 (5th Cir. 1996) .......................................................13, 16, 19, 20

*Sierra Club v. Nat'l Marine Fisheries Serv.*,
  No. 8:25-cv-1627 (D. Md.) ......................................................6, 11, 17

*Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*,
  275 F.3d 432 (5th Cir. 2001) ...............................................................13

*Texas v. U.S. Dep't of Energy*,
  754 F.2d 550 (5th Cir. 1985) .........................................................12, 20

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972)............................................................................18

*WildEarth Guardians v. Haaland*,
  No. 21-cv-175-RC (D.D.C.) ...............................................................11

**Statutes**

16 U.S.C. § 1536(a)(2).......................................................................2, 4

16 U.S.C. § 1536(b) ..........................................................................2, 3

16 U.S.C. § 1536(b)(3)(A) ....................................................................3

16 U.S.C. § 1536(b)(4)...........................................................................3

16 U.S.C. § 1536(e) ...............................................................................4

16 U.S.C. § 1536(h) ...............................................................................4

16 U.S.C. § 1536(j) ........................................................................1, 4, 9

16 U.S.C. § 1536(n) .............................................................................21

16 U.S.C. § 1536(o)(2)..................................................................................4

**Rules**

5th Cir. R. 15.5..................................................................................1, 13

Fed. R. App. P. 15(d) ...........................................................................passim

Fed. R. App. P. 27..................................................................................2

Fed. R. Civ. P. 24...........................................................................12, 13, 16

Fed. R. Civ. P. 24(a)...........................................................................12, 13

Fed. R. Civ. P. 24(a)(2).........................................................................17, 18

Fed. R. Civ. P. 24(b) .............................................................................20

Fed. R. Civ. P. 24(b)(3)...........................................................................21

**Regulations**

50 C.F.R. § 402.14(a)..............................................................................2

50 C.F.R. § 402.14(h) .............................................................................2

50 C.F.R. § 402.14(h)(2)...........................................................................3

50 C.F.R. § 402.14(i) ..............................................................................3

91 Fed. Reg. 16,966-01 (Apr. 3, 2026)..........................................................9, 15

## I. INTRODUCTION AND BACKGROUND

This multidistrict case challenges the Endangered Species Committee's ("Committee") decision to grant an exemption under Section 7(j) of the Endangered Species Act ("ESA") for agency actions reviewed in the National Marine Fisheries Service's ("NMFS") 2025 biological opinion and in Fish and Wildlife Service's ("FWS") 2018 and 2025 consultation decisions that govern oil and gas activities in the Gulf of America ("Gulf") ("Exemption Decision"). The Exemption Decision follows a formal determination by the Secretary of War that such an exemption is necessary for national security reasons, reflecting Congress's express recognition that under limited circumstances, there may be national security interests that override all other provisions in the ESA. Since publication of the Exemption Decision, at least seven petitions for review have been filed to challenge the Committee's actions. Those petitions have since been consolidated into a single multidistrict action. Ultimately, the Exemption Decision directly governs and authorizes the scope, conditions, and legality of offshore oil and gas operations in the Gulf conducted by the members of proposed intervenor-respondent American Petroleum Institute ("API").

Pursuant to Fed. R. App. P. 15(d) and Fifth Cir. R. 15.5, API respectfully moves for leave to intervene in the above-captioned matter to protect its members'

direct interests in the Exemption Decision. If granted intervention, API intends to participate in all aspects of this case.

Counsel for API contacted counsel for the parties regarding this motion. Federal Respondents do not oppose. Petitioner American Energy Association consents to the motion. Petitioner Natural Resource Defense Council reserves the right to file an opposition within the time allowed by Fed. R. App. P. 27. All other Petitioners take no position on this motion.

## A.    Regulatory Context and Background

### 1.    Section 7 of the ESA and the Exemption Process

Section 7 of the ESA requires federal agencies to ensure that their actions are "not likely to jeopardize the continued existence" of ESA-listed species or "result in the destruction or adverse modification of [the critical] habitat of such species." 16 U.S.C. § 1536(a)(2). To comply with this mandate, a federal "action agency" is required to consult with the applicable federal "consulting agency" regarding actions that may adversely affect ESA-listed species. *Id.*; 50 C.F.R. § 402.14(a). The consulting agency evaluates those effects and completes the Section 7 consultation by issuing a biological opinion regarding whether the action is likely to jeopardize ESA-listed species or adversely modify critical habitat. 16 U.S.C. § 1536(b); 50 C.F.R. § 402.14(h).

There are two different consulting agencies: NMFS and FWS (collectively the "Services"). NMFS is the consulting agency for most marine species. FWS is the consulting agency for most terrestrial species. There are a few species (e.g. sea turtles) where the Services share consulting responsibilities.

Many actions subject to Section 7 of the ESA also involve an "applicant" for the specific federal approval. The Section 7 consultation process recognizes a specific role for non-federal applicants to be involved in the Section 7 consultation along with the federal action agency and the consulting agency. *See* 16 U.S.C. § 1536(b).

If the consulting agency finds that an action *is* likely to jeopardize an ESA-protected species or adversely modify or destroy the critical habitat of an ESA-protected species, it will propose "reasonable and prudent alternatives" to modify or place certain conditions on the proposed action. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(2). For proposed actions (or reasonable and prudent alternatives) that are *not* likely to jeopardize listed species or adversely modify critical habitat, the consulting agency will issue a statement authorizing any "incidental take" from the proposed action along with "reasonable and prudent measures" to minimize the impacts of the authorized incidental take. 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i). The incidental take statement is "functionally equivalent to a permit because the activity in question would, for all practical

- 3 -

purposes, be prohibited but for the incidental take statement." *Ramsey v. Kantor*, 96 F.3d 434, 444 (9th Cir. 1996).

Section 7 of the ESA also provides an exemption. The consultation obligation to consult applies "unless" the Committee grants an exemption. 16 U.S.C. § 1536(a)(2). The Committee is a Cabinet-level body that has the exclusive authority to grant exemptions from the requirements of Section 7 of the ESA altogether, even if the exemption would jeopardize endangered or threatened species. 16 U.S.C. § 1536(e). The Secretary of the Interior acts as the chairman of the Committee. *Id*. Pursuant to Section 7(j) of the ESA, "the Committee shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." 16 U.S.C. § 1536(j).

After a formal national security finding, the Committee must issue an exemption order pursuant to Section 7(h). 16 U.S.C. § 1536(j). The resulting order operates to release an agency action from the requirements of Section 7 of the ESA, including any jeopardy conclusions and take prohibitions of the biological opinions for the covered activity. *See* 16 U.S.C. § 1536(a)(2), (o)(2).

### 2. The Oil and Gas Program in the Gulf

The Bureau of Ocean Energy Management ("BOEM") and the Bureau of Safety and Environmental Enforcement ("BSEE") (collectively the "Bureaus") administer offshore oil-and-gas leasing and activities requiring permits and

approvals under the Outer Continental Shelf Lands Act. The Gulf's outer continental shelf is one of the world's major oil and gas producing regions. *See* National Security Finding, Secretary of War, March 13, 2026 ("National Security Finding"), attached as Exhibit B to the Declaration of Holly Hopkins ("Hopkins Decl."). The Gulf produces 15% of U.S. crude oil (roughly two million barrels per day) and about 1.7% of U.S. dry natural gas, making it essential to domestic energy operations. National Security Finding ¶ 1.

To manage this program, the Bureaus approves thousands of plans and permits each year. As of January 1, 2026, there are 1,919 active oil and gas leases in the Gulf. Hopkins Decl. ¶ 6. In fiscal year 2024, operations on the outer continental shelf in the Gulf produced 668 million barrels of oil and 700 billion cubic feet of natural gas. *Id*. These resources are produced by an extensive network of approximately 1,330 active platforms, 7,570 wells, and 18,390 miles of active pipelines. *Id*. All of these activities are supported by a robust and ongoing planning and permitting process, including hundreds of approvals issued each year by BOEM and an average of 5,829 approvals per year issued by BSEE. *Id*. API's members are the primary recipients of these plan and permit approvals. *Id*.

### 3. Gulf Oil and Gas Program Biological Opinions

In order to comply with Section 7 of the ESA, BOEM and BSEE engaged in comprehensive consultations with FWS and NMFS over many years. National

Security Finding ¶¶ 4, 25–28. Because of the number of approvals needed each year, BOEM, BSEE and the Services took a comprehensive approach and developed multi-year biological opinions that governed all activities in the Gulf. *See id.* ¶¶ 25–30. In 2018, FWS produced a 10-year biological opinion (the "2018 BiOp") and revisited that decision in 2025, and in 2020, NMFS produced a 10-year biological opinion. *Id.* ¶¶ 27–28. Each biological opinion includes an incidental take statement as required by Section 7 of the ESA. Both biological opinions were intended to satisfy the Bureaus' obligations under the ESA and allow for timely issuance of the permits necessary for continued operation of the Gulf oil and gas program. National Security Finding ¶¶ 26, 29.

Both biological opinions were challenged by environmental groups who sought to vacate the opinions and halt oil and gas operations in the Gulf. *See* National Security Finding ¶¶ 31, 33–34, 40. A district court in Maryland did vacate NMFS's biological opinion, but not before NMFS produced a revised biological opinion on May 20, 2025 (the "2025 BiOp"). *Id*. ¶¶ 36–37. Environmental groups have now challenged NMFS's 2025 BiOp and seek to vacate that opinion as well. *Id.* ¶ 38; *see also Sierra Club v. Nat'l Marine Fisheries Serv.*, No. 8:25-cv-1627 (D. Md.), Dkt. 32 (Amended Complaint). Litigation over FWS's 2018 BiOp and subsequent consultation action in 2025 remains pending. *Id.* ¶ 40; *see generally Ctr. For Biological Diversity v. Burgum*, No. 24-cv-990 (D.D.C.). The Bureaus

expressly recognized that API was an "applicant" in the 2025 consultations. Hopkins Decl. ¶¶ 9–10.

Vacatur of either biological opinion would have disastrous consequences on the Gulf of America oil and gas program. National Security Finding ¶¶ 8–9, 41–52; *see also* Hopkins Decl. ¶¶ 6, 11, 13. These opinions and their incidental take statements are a linchpin for Gulf oil and gas operations. National Security Finding ¶ 29. They allow federal agencies to issue permits, approve plans, and take other similar actions necessary for Gulf oil and gas development in compliance with the ESA. *Id*. ¶ 29. They likewise protect agencies and operators from civil and criminal liability when acting in compliance therewith. *Id*. All oil and gas operators in the Gulf, including API's members, rely on these ESA consultation decisions and actions. *Id*. ¶ 30.

### 4. The Committee's Exemption

On March 13, 2026, Secretary Hegseth determined that an exemption from the ESA was necessary "to remove a substantial threat to national security." Sec'y Hegseth Letter, March 13, 2026, at 2, attached as Exhibit A to the Hopkins Decl. He based his decision on several factors, including the devastating effects that vacatur of NMFS's 2025 BiOp and FWS's 2018 and 2025 consultation decisions would have on domestic oil-and-gas production. National Security Finding ¶¶ 6–17, 41–52. The Secretary concluded that vacating these ESA consultation decisions

- 7 -

would "effectively halt all oil and gas activities in the Gulf" because the Bureaus would have to—but could not—perform the "case-by-case ESA review" of thousands of permitting decisions. *Id.* ¶¶ 42, 43. Operators would also face "a no-win decision" from the immediate loss of take coverage: (a) shut down operations and risk "massive financial losses, breach of contract claims, and other negative consequences" including "significant worker and public health and safety issues and industrial damage" or (b) continue to operate and "risk violating the ESA." *Id.* ¶ 46.

The Secretary found that cessation of oil-and-gas production in the Gulf would "significantly jeopardize American energy independence and, as a result, the national security," in part by driving up prices and boosting oil export revenues for geopolitical adversaries like Russia and Iran. *Id.* ¶¶ 56–57; *see also id.* ¶ 60. That concern is particularly acute, the Secretary explained, "given the global volatility in oil and gas production and supply" and "the current conflict with Iran." *Id.* ¶ 84. The Secretary further determined that halting oil production in the Gulf would increase prices for American consumers, cause the loss of American jobs, drive up inflation, hamstring the nation's ability to respond to emergencies, and disrupt the military's critical fuel supply chain. *Id.* ¶¶ 61, 64, 70, 71, 75. In sum, the consequences of vacating the ESA consultation decisions would be

catastrophic. *Id.* ¶ 76. Even judicial interference short of vacatur posed "an unacceptable risk to the national security." *Id.* ¶ 83.

Once the Secretary made his National Security Finding, the ESA mandated that the Committee meet to grant the exemption. *See* 16 U.S.C. § 1536(j). The Committee met on March 31, 2026, and published its order granting the exemption on April 3, 2026. *See* 91 Fed. Reg. 16,966-01 (Apr. 3, 2026). The exemption "applies to the full scope of" "the oil and gas exploration, development, and production activities" that were analyzed in the Services' biological opinions and consultation decisions, while maintaining "robust avoidance or minimization measures" established by the action agencies. *Id.*

## B.    API's Interest

Formed in 1919, API is the primary national trade association of the oil and gas industry. Hopkins Decl. ¶ 3. API represents approximately 600 member companies involved in all aspects of the U.S. oil and natural gas industry, including explorers, producers, refiners, suppliers, pipeline operators, marine transporters, and service and supply companies.[1] *Id.* Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and gas industry capable of meeting the energy needs of the nation in an efficient and

---

[1] A complete list of API's members is available online. *See* Members, API, https://www.api.org/membership/members (last visited May 4, 2026).

environmentally responsible manner. *Id.* One of API's purposes is representation of the interests of the oil and gas industry in litigation. *Id.* API also develops oil and gas standards, conducts and sponsors research, engages with regulatory agencies, and participates in regulatory processes on behalf of its members and the oil and gas industry. *Id.*

API's members conduct many of the activities directly addressed by NMFS's 2025 BiOp and FWS's 2018 and 2025 consultation decisions and therefore are directly regulated by the Exemption Decision described above. *Id.* ¶¶ 5–10. Almost all of API's members' Gulf activities occur in areas offshore of Texas or Louisiana, with most of the associated vessel traffic to those areas originating from the Port of Galveston, Texas; and the Port of Fourchon, Port of Morgan City, and Port of Iberia, Louisiana. *Id.* ¶ 5. Almost all of API's members who conduct the activities addressed in NMFS's 2025 BiOp and FWS's 2018 and 2025 consultation decisions, and therefore the Exemption Decision either are headquartered or have offices in Houston, Texas, or New Orleans, Louisiana. *Id.*

API seeks to intervene because its members' oil and gas activities are the very subject of the Exemption Decision, and as a representative of the regulated entities, API has the right to protect its members' interest in lawfully operating their oil and gas activities in the Gulf. *Id.* ¶¶ 5–10. API was a non-federal "applicant" for ESA consultation decisions that are the subject of the Exemption

Decision. *Id.* ¶¶ 6–17, 41–52. Vacatur of the Exemption Decision would subject API's members to recurring litigation over the applicable ESA consultation decisions that consistently threaten to shut down the domestic oil and gas industry. *Id.* ¶¶ 13, 42–43. In addition, any settlement of this action would directly implicate and potentially negatively impact the interests of API or its members, which are adverse to both Petitioners and Federal Respondents. *See id.* ¶¶ 3, 14, 18. API also seeks to intervene to fulfill its organizational missions to advocate for the lawful conduct of oil and gas activities in the Gulf and to support the oil and gas industry in the United States, which in turn creates a reliable source of domestic energy and national security stability. *Id.* ¶¶ 3–6. Indeed, courts have routinely granted API's motions to intervene in lawsuits brought by plaintiffs challenging governmental actions with respect to oil and gas activities, including multiple lawsuits over the biological opinions and consultation decisions issued by NMFS and FWS that are the subject of the Exemption Decision.[2]

---

[2] *See, e.g., Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) (challenge to five-year leasing program); *Sierra Club et al. v. Nat'l Marine Fisheries Serv. et al.*, No. 8:20-CV-03060, Dkt. No. 55 (D. Md. May 12, 2021) (challenge to programmatic biological opinion governing federally authorized oil and gas activities in the Gulf); *WildEarth Guardians v. Haaland*, No. 21-cv-175-RC, Dkt. No. 22 (D.D.C. Apr. 20, 2021) (challenge to oil and gas lease sales); *Ctr. For Biological Diversity*, No. 24-cv-990, Dkt. No. 22 (D.D.C. Sept. 23, 2024) (challenge to FWS's 2018 and 2025 consultation documents); *Sierra Club v. Nat'l Marine Fisheries Serv.*, No. 8:25-cv-1627, Dkt. No. 37 (D. Md. Aug. 20, 2025) (environmental groups challenging NMFS's 2025 biological opinion).

- 11 -

## II.  ARGUMENT

### A.    API is Entitled to Intervene as of Right.

Fed. R. App. P. 15(d) provides that a party seeking intervention in a United State Circuit Court of Appeals must file a motion which sets forth "a concise statement of the interest of the moving party and the grounds for intervention." Because Fed. R. App. P. 15(d) does not provide a standard for resolving intervention questions, this Court refers to the factors found in Fed. R. Civ. P. 24. *See Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 551–52 (5th Cir. 1985) (citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205 (1965)).[3]

Fed. R. Civ. P. 24(a) provides for intervention as of right if each of the following tests are met: (1) the motion is timely made, (2) the applicant must claim a legally protectable interest relating to the property or transaction which is the subject of the action; (3) the interest could be impaired or impeded as a result of the litigation; and (4) existing parties do not adequately represent the applicant's

---

[3] This Court also considers "the statutory design of the act[s]" underlying the administrative appeal. *Texas*, 754 F.2d at 551. Here, the statutes contemplate a role for API's members, which "participa[ted] in the proceedings" as an "applicant" before the consulting agency and are thus "intimately involved" with Petitioners' challenge to the Exemption Decision that implicates the appliable biological opinions and consultation decisions covering all oil and gas activities in the Gulf. *Id.* at 552.

interests. Fed. R. Civ. P. 24(a); *see Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994). API's intervention satisfies each of these criteria.[4]

### 1.    API Has Timely Moved for Intervention.

Fed. R. App. P. 15(d) provides that a motion to intervene in a proceeding seeking review or enforcement of an agency order "must be filed within 30 days after the petition for review is filed," while Fifth Cir. R. 15.5 provides that "[a] motion to intervene under Fed. R. App. P. 15(d) should be filed promptly after the

---

[4] For purposes of applying the factors of Rule 24 for granting intervention pursuant to Fed. R. App. P. 15(d), API may assert the interests of its members. An association may act on behalf of its members when its members would otherwise have standing in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *accord Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*, 275 F.3d 432, 437 n.14 (5th Cir. 2001) (association had standing because lawsuit "deal[t] with the application of a [regulatory] standard that affects [association's] members"). By showing *infra* that Rule 24 requirements are met, API also establishes that API's members would themselves have standing, *see Supreme Beef Processors, Inc.*, 275 F.3d at 437 n.14; *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996). Representation in litigation is germane to API's overall purposes of advancing the interests of the oil and gas industry, and "mere pertinence between litigation subject and organizational purpose is sufficient." *Nat'l Lime Ass'n v. E.P.A.*, 233 F.3d 625, 636 (D.C. Cir. 2000) (citation modified); *see also Glickman*, 82 F.3d at 108–10 (goals of suit to limit farmers' water pumping germane to association purpose to advance farmers' interests); Hopkins Decl. ¶ 3. It is not necessary for API's members to be included in this case individually, especially because no monetary relief is being sought, *see Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343–44 (1977). API thus satisfies the three requirements of associational standing.

- 13 -

petition for review of the agency proceeding is filed, but not later than 14 days prior to the due date of the brief of the party supported by the intervenor."

This motion to intervene is timely because it is filed within 30 days of the date that (1) the National Resources Defense Council filed a petition for review in the D.C. Circuit Court of Appeals on April 3, 2026, and (2) the American Energy Association filed a petition for review in the Fifth Circuit on April 13, 2026.[5] Moreover, no briefing schedule has been set yet and therefore this motion has been filed more than 14 days prior to the unidentified due date of Respondents' brief. *See* Dkt. 15.

### 2. API Possesses a Cognizable Interest Relating to the Subject Matter of This Action.

A cognizable interest is established when an intervenor shows a "'direct, substantial, [and] legally protectable' interest in the property or transaction that forms the basis of the controversy in the case." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 379 (5th Cir. 2001) (quoting *Espy*, 18 F.3d at 1207). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many

---

[5] Several of the Petitioners have moved for reconsideration of this Court's consolidation order on the grounds of timeliness of the multiple petitions for review filed across various jurisdictions. *See* Dkt. 7 at 2. API seeks intervention in each and all of these cases, regardless of the outcome of the reconsideration motion. In the event that this court decides to transfer one or more of these cases to another court, API's motion, if then still pending, should be transferred as well.

apparently concerned persons as is compatible with efficiency and due process[.]" *Espy*, 18 F.3d at 1207.

API's interest in the Exemption Decision is self-evident. API's members are the primary leaseholders and operators in the Gulf of America oil and gas program. Hopkins ¶ 5. The Exemption Decision is a critical component o the statutory and regulatory framework for those members to continue to operate in the Gulf. *See* 91 Fed. Reg. 16,966-01 (operations must comply with specified "avoidance or minimization measures"). The Exemption Decision is intended to avoid "disruption" to members' oil and gas operations. National Security Finding ¶ 81. And the exemption was intended to avoid placing API's members in a "no-win" situation where they either must (a) immediately shut down operations and face "breach of contract claims" and create "significant worker and public health and safety issues and industrial damage"; or (b) "continue the operations . . . and risk violating the ESA (subjecting themselves to potential federal enforcement actions or citizen suits under the ESA and reputational damage)." National Security Finding ¶ 46. In other words, the Exemption Decision provides API's members with legal protection against ESA Section 7 challenges and removes the threat of litigation and vacatur of the applicable biological opinions and consultation decisions from oil and gas operations. Hopkins Decl. ¶¶ 13–14.

API's interests therefore are more than just economic. API's members' rights and obligations turn on the continued validity and scope of the Exemption Decision and how it modifies the enforceability of the NMFS's 2025 BiOp and FWS's 2018 and 2025 consultation decisions. The Exemption Decision expressly defines the legal conditions under which API's members may lawfully operate under the ESA and reduces the threat of vacatur of the relevant biological opinions and consultation decisions, which has the potential to wreak havoc on API's members' oil and gas operations in the Gulf. *See Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (association has sufficient interest where plaintiff's "suit intends to have a direct impact upon" members' activities); *see also* Fed. R. Civ. P. 24 advisory committee's note on the 1966 amendments ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene[.]"); *Espy*, 18 F.3d at 1207 (association's interest established by lawsuit's threat to members' contracts). As members of the oil and gas industry, API and its members also equally seek to protect the domestic energy supply and national security.[6]

---

[6] *Cf. Chevron USA Inc. v. Plaquemines Par., Louisiana*, 608 U.S. ----, 146 S.Ct. 1052, 1058, 1061-62 (2026) (oil and gas industry played an essential role during World War II by supplying fuel for military operations and its actions were federally directed activities rather than purely private industrial conduct).

### 3. The Disposition of This Action May Impair or Impede API's Interests.

The third factor for intervention under Rule 24(a)(2) requires showing that "the disposition of the case into which [movant] seeks to intervene may impair or impede [the movant's] ability to protect [its] interest." *Glickman*, 256 F.3d at 380. "Though the impairment must be 'practical' and not merely 'theoretical,' the [movant] need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022).

Here, Petitioners challenge and seek to overturn the Exemption Decision, which regulates API and its members' oil and gas activities in the Gulf as described above. If Petitioners' requested relief is granted, then the relevant jeopardy determinations, associated mitigation measures, and reasonably prudent alternatives would be reinstated. Further, API would be forced to contend with decades-long litigation over the lawfulness of the relevant biological opinions and consultation decisions. API relies on the Exemption Decision for regulatory certainty and to remove the recurring threat of a court-ordered vacatur, an outcome which has already materialized in the past. Hopkins Decl. ¶¶ 13–18; *Sierra Club*, Case No. 8:20-cv-3060, Dkt. 205 (Order). Because this Court's resolution has a practical effect on API's members' ability to operate in the Gulf, API has satisfied

- 17 -

the third requirement under Rule 24(a)(2). *See La Union del Pueblo Entero*, 29

F.4th at 307.

### 4.    API's Interest Will Not Be Adequately Protected by Respondents.

API's interests are substantially different from those of the Federal

Respondents, warranting intervention. An applicant for intervention need only

show that representation of its interest by an existing party "may be" inadequate.

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 & n.10 (1972).

The burden of the applicant in meeting that test is treated as "minimal." *Id.* at 538

& n.10.

The Fifth Circuit has repeatedly recognized in environmental cases that

government entities cannot serve as adequate advocates for private parties, even if

there may be a common objective. For example, the Fifth Circuit granted

intervention to two trade associations in a case brought against the United States

Forest Service regarding logging procedures because "[t]he government must

represent the broad public interest, not just the economic concerns of the timber

industry. Given the minimal burden on the movants to satisfy this requirement,

[this Court] conclude[s] that the government's representation of the intervenors' interest is inadequate." *Espy*, 18 F.3d at 1208.[7]

The Federal Respondents cannot adequately represent API's interests in this case. The Federal Respondents here are charged with representing the general public's interest and defending the legality of the Committee's decision to grant an ESA exemption on national security grounds. While API's members likewise are substantially aligned with the government's interest in the nation's energy security and national security considerations underlying the exemption, API ultimately seeks to protect regulatory certainty, a reasonable balance between environmental safeguards and offshore energy development, and its members' concrete business and operational interests in continued oil and gas development in the Gulf.

In defending the Exemption Decision, the Federal Respondents are likely to prioritize national security rationales and may rely on legal arguments that do not fully address or may ignore API's economic and regulatory interests. Moreover,

---

[7] *See Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (granting intervention because "the interests of the pumpers, who are local cities, businesses, and governmental entities that rely on the aquifer's water supply for their immediate subsistence, will diverge from those of the various state agencies who are charged with taking a state-wide view of the aquifer as it affects wildlife, water resources and quality, and the agricultural industry"); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) ("[T]he government must represent the broad public interest, not just the economic concerns of [one] industry . . . even though, at this point, they share common ground." (citation modified)); *Glickman*, 256 F.3d at 381 (same).

the Federal Respondents may be willing to accept remedial outcomes that preserve the national security policy underlying Exemption Decision at the expense of imposing burdens on industry operations.

Even though the Federal Respondents' interest and API's interest may share common ground in defending the Exemption Decision, their ultimate objectives diverge and therefore support API's intervention as of right. *See Glickman*, 82 F.3d at 110 ("the interests of [association's] members will not necessarily coincide" with the government's broader interests, "even though, at this point, they share common ground"); *see also Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002) (that government's and private party's interests "may diverge in the future . . . is enough to meet the . . . burden on this issue").

In sum, API meets all four requirements for intervention as of right, and its motion under Fed. R. App. P. 15(d) should be granted.

**B.    In the Alternative, API Qualifies for Permissive Intervention.**

In the alternative, API respectfully requests that the Court grant permission to intervene under Rule 24(b),[8] which provides, in pertinent part:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

---

[8] *See Texas*, 754 F.2d at 553; *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283*, 382 U.S. at 217 n.10.

First, for the reasons set forth above, this motion is timely and has been filed "within 30 days after the petition for review is filed." *See* Fed. R. App. P. 15(d). Further, this case is in its earliest stage, and no party will be prejudiced by intervention.

Second, API's and Federal Respondents' defenses will involve common questions of law and fact regarding the Committee's compliance with the Exemption Decision criteria. API denies that Petitioners are entitled to the relief they seek and will defend against Petitioners' claims. *See United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 577–78 (5th Cir. 2023) (permissive intervention is appropriate where proposed intervenor's claims and defenses have questions of law or fact in common with those in the pending action).

Third, intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). API's participation creates no delay or prejudice to any party. Further, 16 U.S.C. section 1536(n) requires all petitions for review to be filed directly in the 5th or 11th Circuit, and therefore API had no opportunity to intervene any earlier in the trial court. As a result, API should be granted the opportunity to defend its rights and interests in oil and gas activities in the Gulf. Allowing intervention is the only equitable result under these circumstances. In short, if the Court does not allow API to intervene as of right, it should allow API permissive intervention in the exercise of its sound discretion.

For the foregoing reasons, API meets the requirements for intervention pursuant to Fed. R. App. P. 15(d) and this motion should be granted.

Dated: May 4, 2026.

/s/ Jason T. Morgan
JASON T. MORGAN, WA. Bar No. 38346
jason.morgan@stoel.com
TIFFANY WANG, WA. Bar No. 57367
tiffany.wang@stoel.com
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, Washington 98101
T: (206) 624-0900
F: (206) 386-7500

*Counsel for Proposed Intervenor-Respondent
American Petroleum Institute*

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, an electronic copy of the foregoing

**THE AMERICAN PETROLEUM INSTITUTE'S MOTION TO**

**INTERVENE** was filed with the Clerk of Court for the United States Court of

Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service

on all parties will be accomplished by the appellate CM/ECF system.

> _/s/ Jason T. Morgan_
> Jason T. Morgan
> STOEL RIVES LLP
> 600 University Street, Suite 3600
> Seattle, Washington 98101
> T: (206) 624-0900
> F: (206) 386-7500
> jason.morgan@stoel.com

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this motion:

(i)    complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 32.2, this document contains 5,174 words; and

(ii)    complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

Dated: May 4, 2026.

/s/ Jason T. Morgan
Jason T. Morgan