# In the United States Court of Appeals
## For the Fifth Circuit

**AMERICAN ENERGY ASSOCIATION; NATURAL RESOURCES DEFENSE COUNCIL, INCORPORATED; DEFENDERS OF WILDLIFE; NATIONAL WILDLIFE FEDERATION; NATIONAL PARKS CONSERVATION ASSOCIATION; FLORIDA WILDLIFE FEDERATION; LOUISIANA WILDLIFE FEDERATION; TEXAS CONSERVATION ALLIANCE,**
*Petitioners*,

**v.**

**DOUG BURGUM, Secretary of the Interior, in his official capacities as Chair and Member of the Endangered Species Committee; BROOKE ROLLINS, Secretary of Agriculture, in her official capacity as a Member of the Endangered Species Committee; DANIEL DRISCOLL, Secretary of the Army, in his official capacity as a Member of the Endangered Species Committee; PIERRE YARED, Acting Chair of the Council of Economic Advisors, in his official capacity as a Member of the Endangered Species Committee; LEE ZELDIN, Administrator of the Environmental Protection Agency, in his official capacity as a Member of the Endangered Species Committee; NEIL JACOBS, Administrator of the National Oceanic and Atmospheric Administration, in his official capacity as a Member of the Endangered Species Committee; PETE HEGSETH, Secretary, U.S. Department of Defense,**
*Respondents*.

On Petitions for Review of an Order of the Endangered Species Committee

## PETITIONER AMERICAN ENERGY ASSOCIATION'S RESPONSE IN OPPOSITION TO NRDC'S MOTION TO STAY OR DISMISS

# CERTIFICATE OF INTERESTED PERSONS

***American Energy Association, et al. v. Doug Burgum, et al.***
No. 26-60240

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

### Petitioners

American Energy Association

Natural Resources Defense Council, Incorporated

Defenders of Wildlife

National Wildlife Federation

National Parks Conservation Association

Florida Wildlife Federation

Louisiana Wildlife Federation

Texas Conservation Alliance

Center for Biological Diversity

### Respondents and Respondent-Intervenors

American Petroleum Institute

Doug Burgum, Secretary of the Interior, in his official capacities as Chair and Member of the Endangered Species Committee

Brooke Rollins, Secretary of Agriculture, in her official capacity as a Member of the Endangered Species Committee

Daniel Driscoll, Secretary of the Army, in his official capacity as a Member of the Endangered Species Committee

Pierre Yared, Acting Chair of the Council of Economic Advisors, in his official capacity as a Member of the Endangered Species Committee

Lee Zeldin, Administrator of the Environmental Protection Agency, in his official capacity as a Member of the Endangered Species Committee

Neil Jacobs, Administrator of the National Oceanic and Atmospheric Administration, in his official capacity as a Member of the Endangered Species Committee

Pete Hegseth, Secretary, U.S. Department of Defense

**Attorneys**

James R. Conde, Boyden Gray PLLC

Jason T. Morgan, Stoel Rives LLP

Tiffany Wang, Stoel Rives LLP

Ryan P. Steen, Stoel Rives LLP

Katherine Desormeau, Natural Resources Defense Counsel

Jane P. Davenport, Defenders of Wildlife

Joseph M. Manning, Defenders of Wildlife

Catherine Wannamaker, Southern Environmental Law Center

Brian Segee, Center for Biological Diversity

Christopher Anderson, U.S. Department of Justice

Dimple Chaudhary, U.S. Department of Justice

Robert Nolan Stander, U.S. Department of Justice

In accordance with Federal Rule of Appellate Procedure 26.1, Petitioner American Energy Association discloses that it is a 501(c)(6) organization that has no parent corporation, and there is no publicly held corporation that owns ten percent (10%) or more of American Energy Association.

June 23, 2026

Respectfully submitted,

/s/ James R. Conde
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620

*Counsel for Petitioner*
*American Energy Association*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................................i

TABLE OF CONTENTS .........................................................................................iv

TABLE OF AUTHORITIES ......................................................................................v

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................1

BACKGROUND.......................................................................................................4

     I.      The Endangered Species Act ..................................................................4

     II.    Regulatory Background .........................................................................6

          A.     The Gulf of America Consultations ......................................... 6

          B.     The Exemption ........................................................................ 8

     III.   Procedural History.................................................................................9

ARGUMENT.............................................................................................................10

     I.      A Stay Is Unwarranted...........................................................................10

          A.     A Stay Is Inequitable ............................................................... 11

          B.     NRDC's Jurisdictional Argument Is Wrong .......................... 13

          C.     A Stay Would Not Conserve Resources...................................17

     II.    The Court May Not Dismiss With a Right to Reinstate .................... 19

CONCLUSION.........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) ............................................................ 17

*Bennett v. Spear*,
  520 U.S. 154 (1997) .............................................................. 5

*Cisneros v. Alpine Ridge Grp.*,
  508 U.S. 10 (1993) ............................................................. 15

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  603 U.S. 799 (2024) ............................................................ 20

*CTS Corp. v. Waldburger*,
  573 U.S. 1 (2014) ............................................................... 20

*Eagle-Picher Indus., Inc. v. EPA*,
  759 F.2d 905 (D.C. Cir. 1985) ............................................. 20

*FCC v. ITT World Commc'ns, Inc.*,
  466 U.S. 463 (1984) ....................................................... 13, 14

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ....................................................... 10, 11

*Louisiana v. NMFS*,
  817 F. Supp. 3d 390 (W.D. La. 2026) ............................. 5, 8, 9

*Nat'l Ass'n of Mfrs. v. DOD*,
  583 U.S. 109 (2018) ............................... 13, 15, 16, 17, 19

*Sierra Club v. NMFS*,
  797 F. Supp. 3d 440 (D. Md. 2024) ....................................... 7

*Sierra Club v. NMFS*,
  No. 8:25-cv-1627, 2025 WL 3706503 (D. Md. Dec. 22, 2025) ............................. 7

v

**Statutes**

5 U.S.C. § 702 .................................................................... xxviii

5 U.S.C. § 703.................................................................... xxviii

5 U.S.C. § 704 ........................................................................ 14

16 U.S.C. § 1536(a)(2) ...................................................... 5, 15, 16

16 U.S.C. § 1536(b)(3)(A) ..........................................................5

16 U.S.C. § 1536(b)(4) ...............................................................5

16 U.S.C. § 1536(e) .................................................................5, 6

16 U.S.C. § 1536(g) .................................................................5, 6

16 U.S.C. § 1536(h) ................................................................6, 14

16 U.S.C. § 1536(h)(1)(B) ..........................................................3

16 U.S.C. § 1536(j)...................................................... 4, 6, 14, 16

16 U.S.C. § 1536(*l*)...................................................................6

16 U.S.C. § 1536(n)............................................. 2, 3, 4, 13, 14, 19, 20

16 U.S.C. § 1536(o) ...................................................................5

16 U.S.C. § 1538(a)(1)(B)...........................................................5

16 U.S.C. § 1538(a)(1)(C) ...........................................................5

28 U.S.C. § 2112(a).....................................................................2

28 U.S.C. § 2112(a)(1) ...............................................................10

28 U.S.C. § 2112(a)(3) ...............................................................10

28 U.S.C. § 2112(a)(5) ...............................................................10

28 U.S.C. § 2401(a) ..................................................................20

43 U.S.C. § 1337 ...........................................................................................6

**Other Authorities**

50 C.F.R. pt. 452.........................................................................................6

50 C.F.R. § 402.14 ......................................................................................5

50 C.F.R. § 402.14(i)(1)(ii) .........................................................................5

50 C.F.R. § 402.14(h)(2)..............................................................................5

50 C.F.R. § 453.03(b)..................................................................................6

5th Cir. R. 42.4 ................................................................................ 4, 19, 20

Fed. R. App. P. 42(b)(2) ..............................................................................4

Fed. R. Civ. P. 41(a)(1)(A)(i) .................................................................. 21

NMFS, *Biological and Conference Opinion on Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement's Oil and Gas Program Activities in the Gulf of America* (2025), https://doi.org/10.25923/k55k-q344 ...............................................7

NMFS, *Biological Opinion on the Federally Regulated Oil and Gas Program Activities in the Gulf of Mexico* (2020), https://doi.org/ 10.25923/hyeh-mb74 ...........................................................................7

NRDC, Press Release, *Trump Administration Uses "God Squad" to Allow Gulf Oil and Gas Industry to Bypass Endangered Species Protections* (Mar. 31, 2026), https://www.nrdc.org/press-releases/ trump-administration-uses-god-squad-allow-gulf-oil-and-gas-industry-bypass..................................................................................1

Robert Bryce, *The Anti-Industry Industry* (Feb. 18, 2023), https://perma.cc/66XJ-2NB4 .............................................................1

U.S. Dep't of the Interior, *Endangered Species Act Meeting* (YouTube, Mar. 31, 2026), https://youtu.be/iC3xyp4GxRE?t=2085 ................................9

**INTRODUCTION AND SUMMARY OF ARGUMENT**

For decades, the "anti-industry industry"[1]—exemplified by movant Natural Resources Defense Council ("NRDC")—has invoked the Endangered Species Act in district courts across the country to tie up oil and gas leasing and permitting activities in the Gulf of America with litigation uncertainty, delays, and regulatory burdens. Their declared goal is to shut down oil and gas offshore development in the Gulf for good. Billions of dollars of investment, and small offshore businesses represented by Petitioner American Energy Association ("AEA"), have been caught in the crossfire.

To end this uncertainty, which threatens the Nation's energy security and chills investment, the Endangered Species Committee voted to grant an exemption for oil and gas activities in the Gulf, while still imposing multiple mitigation measures on industry. Ex. A, 91 Fed. Reg. 16,966 (Apr. 3, 2026).

True to form, NRDC claimed that it would use "every tool at our disposal to fight this"[2] and filed suit in the D.C. District Court and the D.C. Circuit. But, this

---

[1] *See* Robert Bryce, *The Anti-Industry Industry* (Feb. 18, 2023), https://perma.cc/66XJ-2NB4.

[2] NRDC, Press Release, *Trump Administration Uses "God Squad" to Allow Gulf Oil and Gas Industry to Bypass Endangered Species Protections* (Mar. 31, 2026), https://www.nrdc.org/press-releases/trump-administration-uses-god-squad-allow-gulf-oil-and-gas-industry-bypass.

time, Congress has foreclosed NRDC's "tool" of sprawling district court lawsuits and prescribed only one avenue to challenge the Endangered Species Committee's final decision: a petition for review in a proper "United States Court of Appeals," filed "within 90 days after the date of issuance of the decision," and subject to a mandatory, randomized multi-circuit consolidation process by the Judicial Panel on Multidistrict Litigation ("JPML"). 16 U.S.C. § 1536(n); 28 U.S.C. § 2112(a). In this case, JPML randomly selected this Court, Dkt. 9, where AEA had filed a petition for review to challenge the order's mitigation measures.

Now, just weeks away from the deadline to file opening briefs, NRDC asks this Court to consider staying this litigation. According to NRDC, a stay is warranted so a district court judge in D.C. can decide whether *this Court* lacks subject-matter jurisdiction under 16 U.S.C. § 1536(n). *See* NRDC's Mot. to Stay Merits Briefing, or in the Alternative, Dismiss without Prejudice ("NRDC's Mot.") at 4, Dkt. 68 (asserting that this Court lacks jurisdiction under 16 U.S.C. § 1536(n), and that suits must be filed in district court). This latest stay request is even more unwarranted than the last one this Court rejected.

To start, NRDC's purported basis for the stay gets it backwards. The judges of this Court are better positioned to efficiently decide whether *this Court* lacks subject-matter jurisdiction than a district court judge sitting in D.C., and have an

independent duty to do so. Indeed, because AEA and other petitioners challenge the same agency decision, this Court cannot avoid deciding whether it has jurisdiction under 16 U.S.C. § 1536(n), regardless of what NRDC does. And the jurisdictional question before this Court isn't hard anyway. The statutory review provision means what it says: courts of appeals, not district courts, directly hear all challenges to all of the Committee's exemption decisions, 16 U.S.C. § 1536(n), which is the relevant "final agency action." *Id.* § 1536(h)(1)(B).

NRDC's claims that waiting to see if its forum-shopping district court gambit succeeds would "conserve judicial resources." NRDC's Mot. at 6. That defies logic and congressional intent. Waiting to see if the "parallel proceedings" yield a final "determination" *favorable* to NRDC, as NRDC proposes, *id.*, would condone a wasteful attempt to evade the exclusive direct review scheme and invite other litigants to do the same. If anything would "conserve judicial resources," it would be staying NRDC's district court lawsuit—which is at the earliest motion-to-dismiss stage—pending this one. NRDC confuses "conserving judicial resources" with its preferred litigation strategy.

A stay would also be inequitable. A stay would harm AEA's members by continuing to subject them to burdensome mitigation measures without judicial review, and would harm the public interest by perpetuating needless uncertainty

over an important exemption that affects billions of dollars of oil and gas investment and thousands of jobs in the Gulf, and that the Secretary of War has determined is "necessary for reasons of national security." 16 U.S.C. § 1536(j); Ex. B, Secretary of War Letter, Attachment ¶ 103. All of this delay just so NRDC can first attempt a legally dubious forum-shopping tactic.

In the alternative, NRDC's asks this Court to dismiss (all or some?) petitions for review with a right to reinstatement "within 180 days." NRDC's Mot. at 2, 8–9; 5th Cir. R. 42.4. That rule applies only when a stay is warranted, so it doesn't apply here. And applying the rule here would be not just inequitable, but unlawful. The statute of repose limits petitions to those filed within 90 days of publication of the Committee's exemption decision, 16 U.S.C. § 1536(n), a deadline that expires on July 2, 2026. This Court may dismiss NRDC's petition, *see* Fed. R. App. P. 42(b)(2), to be sure, but *only* subject to the 90-day statute of repose, which precludes reinstatement past July 2, 2026. Local rules don't allow litigants to evade a statute of repose.

## BACKGROUND

### I.     The Endangered Species Act

Under the Endangered Species Act ("ESA"), federal agencies must "insure" that actions they carry out, authorize, or fund are "not likely to jeopardize"

4

endangered species. 16 U.S.C. § 1536(a)(2). Depending on the species, agencies must consult with either the Fish and Wildlife Service or the National Marine Fisheries Service (the "Service") to determine whether jeopardy is likely. *Louisiana v. Nat'l Marine Fisheries Serv.* ("*NMFS*"), 817 F. Supp. 3d 390, 394–95 (W.D. La. 2026); 50 C.F.R. § 402.14. If the Service finds the action will likely "jeopardize" a species, then the Service must propose "reasonable and prudent alternatives" that avoid jeopardy. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(2). The agency taking the action then has three choices: It may implement the Service's proposed alternative, end the action, or ask the politically accountable Endangered Species Committee (the "Committee") for an exemption from the ESA. 16 U.S.C. § 1536(e), (g).

If an agency implements the Service's mitigation measures, the Service will issue a license permitting the "incidental take" of endangered species conditioned on compliance with terms and conditions, a permit known as an "incidental take statement." *See id.* §§ 1536(b)(4), 1538(a)(1)(B), (C); 50 C.F.R. § 402.14(i)(1)(ii). That incidental take statement protects persons, including agency officials, from liability for a take, thus allowing the agency action to move forward. *See Bennett v. Spear*, 520 U.S. 154, 168–70 (1997); 16 U.S.C. § 1536(o).

An agency may also seek an exemption from the Committee. The Committee must ordinarily follow several procedural and substantive requirements when considering ESA exemptions. *See* 16 U.S.C. § 1536(e), (g), (h), (*l*); 50 C.F.R. pt. 452. But "[n]otwithstanding any other provision of [the ESA], the Committee shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." *See* 16 U.S.C. § 1536(j). Ultimately, the Committee's "final determinations" must be documented in a "written decision," the Committee must include an order "specifying required mitigation and enhancement measures," if any, and it must publish both "its decision and order in the Federal Register as soon as practicable." 50 C.F.R. § 453.03(b). The Committee's exemption decision is the relevant "final agency action." 16 U.S.C. § 1536(h).

## II.    Regulatory Background

### A.    The Gulf of America Consultations

The Department of Interior administers oil and gas exploration, development, and production activities in the Gulf of America's outer continental shelf under the Outer Continental Shelf Lands Act, including federal leases. 43 U.S.C. § 1337. Because oil and gas activities may affect threatened or endangered species in the Gulf, the Department has consulted with the Service on multiple occasions. *Sierra*

*Club v. NMFS*, 797 F. Supp. 3d 440, 451–52 (D. Md. 2024). And the agencies have repeatedly been sued by groups seeking to prevent oil and gas activity.

For example, in 2020, the Service published a 720-page biological opinion and an incidental take statement authorizing incidental take in the Gulf, while imposing dozens of detailed mitigation measures and terms and conditions. NMFS, *Biological Opinion on the Federally Regulated Oil and Gas Program Activities in the Gulf of Mexico* (2020), https://doi.org/10.25923/hyeh-mb74. Conservation groups sued in district court, and that court vacated the Service's action, a remedy that threatened to shut down oil and gas activity in the Gulf, with devastating consequences for the U.S economy and energy security. *Sierra Club*, 797 F. Supp. 3d at 497; *see* Ex. C, Dep't of Energy, *Gulf of America Energy Security* (Mar. 10, 2026).

The Service tried again in 2025. NMFS, *Biological and Conference Opinion on Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement's Oil and Gas Program Activities in the Gulf of America* (2025), https://doi.org/10.25923/k55k-q344. Again, the Service was sued by conservation groups. *See Sierra Club v. NMFS*, No. 8:25-cv-1627, 2025 WL 3706503, at *1–3 (D. Md. Dec. 22, 2025). This time, however, Louisiana and offshore businesses also sued the Service, arguing that the Service's mitigation measures rested upon unwarranted

speculation, not evidence of likely harm to a species. *See Louisiana*, 817 F. Supp. 3d at 396. The district court agreed. *Id.* at 400–05.

### B.     The Exemption

On March 13, 2026, the Secretary of War notified the Committee that, pursuant to Section 1536(j), an ESA exemption for the Gulf is needed for reasons of national security. Ex. B. The Secretary of War's letter stated that activist litigation threatens domestic oil production necessary for national security. *Id.*, Attachment ¶¶ 5–9, 12–13, 20–30, 56–59, 86–103. The Secretary of War further explained the disastrous consequences of a court vacating the 2025 biological opinion. The Department of Interior would be unable to issue approvals for new and existing Gulf oil and gas development, authorizations for "thousands of active leases, facilities, wells, and miles of pipeline" would be suddenly "call[ed] into question," and regulated parties would lose liability protections, "exposing them to civil and criminal penalties." *Id.*, Attachment ¶¶ 43–45. An exemption under the ESA would allow Gulf of America offshore oil and gas activities to lawfully continue and avoid disruption from litigation.

The Secretary of the Interior, in his capacity as Chairman, then convened the full Committee for a public meeting for March 31, 2026, livestreamed on YouTube. Ex. D, 91 Fed. Reg. 12,672 (Mar. 16, 2026), *see also* U.S. Dep't of the Interior,

*Endangered Species Act Meeting*, at 34:45 (YouTube, Mar. 31, 2026), https://youtu.be/iC3xyp4GxRE?t=2085. The full Committee voted unanimously to grant an exemption. Ex. E, Transcript of Meeting at 16 (Mar. 31, 2026); 91 Fed. Reg. at 16,966 ("By unanimous vote, the Committee exempted under section 7(h) of the Endangered Species Act the Gulf of America Oil and Gas Activities ….").

A few days later the Committee published a decision granting an exemption. Ex. A, 91 Fed. Reg. 16,966. The Committee's exemption decision included an "Order" claiming that "the avoidance or minimization measures described in NMFS's 2025 biological opinion and in [the U.S. Fish and Wildlife Service]'s 2018 and 2025 consultation documents" "shall continue to be implemented under this Order," *id.* at 16,966–67, even though some of those mitigation requirements had been declared unlawful by a district court. *See Louisiana*, 817 F. Supp. 3d at 400–05.

## III.   Procedural History

Within 10 days of publication, AEA petitioned in this Court to challenge the decision's Order, Dkt. 1, and NRDC filed a civil action in district court and a "protective petition" in the D.C. Circuit challenging the decision, Compl., *NRDC, Inc. v. Burgum*, No. 1:26-cv-1116 (D.D.C. Apr. 1, 2026); Pet. for Review at 2–3, *NRDC, Inc. v. Burgum*, No. 26-1079 (D.C. Cir. Apr. 3, 2026), Doc. 2167070. Following the consolidation statute, 28 U.S.C. § 2112(a)(1), (3), JPML issued a

Consolidation Order consolidating those two petitions in this circuit. Dkt. 9. The D.C. Circuit accordingly transferred all related petitions for review to this circuit. 28 U.S.C. § 2112(a)(5). NRDC asked JPML to reconsider its order, but JPML rejected NRDC's arguments, denying reconsideration, Dkt. 67.[3]

NRDC now seeks a stay or dismissal without prejudice with a right to reinstatement.

## ARGUMENT

### I.    A Stay Is Unwarranted

Staying one case during the pendency of another is unusual. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). A movant's burden is especially high "if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* In that event, the movant "must make out a clear case of hardship or inequity in being required to go forward." *Id.*

NRDC seeks to stay the consolidated multi-circuit litigation involving several petitions for review so it can first litigate a single district court lawsuit challenging the Committee's exemption decision. NRDC's Mot. at 4. NRDC's purported basis

---

[3] This Court denied a stay pending JPML's decision. Dkt. 56-2.

for this stay is that a district court might spuriously decide that *this Court* lacks jurisdiction over challenges to the exemption decision, and that it would "conserve judicial resources" for this Court to wait and see if NRDC's gambit ultimately succeeds. *Id.* at 4–5.

A stay is unwarranted. Granting the requested stay of the consolidated case would condone NRDC's attempt to evade exclusive review, invite wasteful parallel district court litigation precluded by Congress, unnecessarily delay legal challenges to an exemption of national significance, and prejudice AEA and the public, all so NRDC can first try a dubious forum-shopping strategy. The equities aren't close. The obvious "equitable" solution that would "conserve judicial resources" is to stay NRDC's district court case pending this one, but NRDC hasn't even attempted to do that. NRDC fails to show "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

## A. A Stay Is Inequitable

As an initial matter, NRDC's burden is "particularly high" because a stay would "work damage" to AEA's members, the public, and the national interest. *Landis*, 299 U.S. at 255.

NRDC claims that AEA "faces no discernible hardship" from a stay. NRDC's Mot. at 7. That assertion is baseless. AEA represents hard-working

entrepreneurs and businesses harmed by the Order's burdensome mitigation requirements, and these members would be harmed by a stay. For example, the Order subjects AEA member Arena Offshore, LLC ("Arena") to burdensome observer, reporting, and training requirements, limitations on pile driving, and onerous decommissioning procedures, all of which increase Arena's costs of doing business and harm its profitability, as detailed in the declaration of CEO Brent R. Ozenne. Ex. F. A stay would therefore work prejudice on the members AEA represents. By contrast, NRDC suffers no prejudice from presenting its merits arguments in this Court. NRDC will get a faster authoritative answer to its jurisdictional and merits arguments by proceeding directly in a court of appeals.

NRDC alternatively claims that a stay need not prejudice AEA because "the Court could stay merits briefing in NRDC's case alone while allowing briefing in AEA's case," and presumably other petitions, "to move forward." NRDC's Mot. at 7. NRDC's "solution" of allowing AEA's petition to move forward alone defies the efficiency required by "the consolidation of proceedings," 28 U.S.C. § 2112(a)(3), and shows that NRDC has no real interest in conserving judicial resources, but only a litigation preference. *See infra* Part I.C.

A stay would also harm the national interest. The Secretary of War found that an exemption was necessary because the litigation uncertainty created by anti-

industry groups, including NRDC, chills investment in the Gulf and threatens America's energy security, which is critical to our national security. Ex. B, Attachment ¶¶ 5–9, 12–13, 20–30, 56–59, 86–103; Ex. C. The exemption provides litigation certainty to the firms investing billions in the Nation's national security. Delaying final resolution of the exemption's validity by staying this litigation would fly in the face of that determination.

## B.    NRDC's Jurisdictional Argument Is Wrong

A stay is further unwarranted because NRDC's attempt to evade this Court's jurisdiction is wrong on the merits. NRDC doesn't even bother to explain why it claims that district courts, not this Court, have jurisdiction. The reason for NRDC's silence is simple: NRDC has no good argument.

Congress could not have been clearer: all challenges to Committee exemptions must be filed in a court of appeals, through a petition for review, not in district court. 16 U.S.C. § 1536(n). That is the exclusive "special statutory review" scheme, which displaces district court lawsuits under the Administrative Procedure Act. 5 U.S.C. § 703; *see, e.g.*, *Nat'l Ass'n of Mfrs.* ("*NAM*") *v. DOD*, 583 U.S. 109, 114 (2018). "Litigants may not evade these provisions by requesting the District Court to enjoin action that is the outcome of the agency's order." *FCC v. ITT World Commc'ns, Inc.*,

466 U.S. 463, 468 (1984). "Yet that is what" NRDC seeks to do by proceeding in district court. *Id.*

What, then, is NRDC's argument against this Court's jurisdiction? NRDC principally argues in its "protective" petition for review that because the Secretary of War found that an exemption for the Gulf was necessary for reasons of national security, 16 U.S.C. § 1536(j), the Committee did not really grant an exemption under subsection (h), but under subsection (j), so no direct review applies under subsection (n). Pet. for Review, *supra*, at 2–3; *see* 16 U.S.C. § 1536(n) ("Any person … may obtain judicial review, under chapter 7 of title 5, of any decision of the Endangered Species Committee under subsection (h).").

That is wrong. Subsection 7(j) states: "Notwithstanding any other provision of this chapter, *the Committee* shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." 16 U.S.C. § 1536(j) (emphasis added). The Committee, not the Secretary of War, still grants the exemption. The Secretary of War's finding is "preliminary," 5 U.S.C. § 704, not final agency action. Only after the Committee convenes and grants an exemption in a written decision is there "final agency action" by the Committee exempting an agency action. 16 U.S.C. § 1536(h). And Section 7 is clear that the only subsection authorizing *the Committee's* grant of an exemption is

subsection (h), as that is the only subsection referenced in other parts of Section 7 explaining the effect of an exemption. *See, e.g.*, *id.* § 1536(a)(2) (requiring consultation "unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section"). Thus, in context, whenever the Committee grants an exemption following the Secretary of War's finding, it does so "under subsection (h)." *NAM*, 583 U.S. at 124 (noting that the term "under" "is a chameleon that must draw its meaning from its context" (cleaned up)).

That is what happened here. The Committee convened, noted the Secretary of War's findings, voted, and published a final decision in the Federal Register, including an order. The Committee's decision expressly noted that it acted under 7(h):

> Based on the Secretary of War's National Security Findings, the Committee grants pursuant to section 7(h) an exemption from the requirements of the Endangered Species Act for Gulf of America Oil and Gas Activities. 16 U.S.C. 1536(h).

Ex. A, 91 Fed. Reg. at 16,966.

Subsection 7(j), by contrast, is merely a notwithstanding provision. "[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993). The point of

subsection (j) is to "override" legal obstacles by commanding the Committee to grant an exemption under subsection (h), but subsection (j) doesn't provide an independent, separate authority for the Committee: it is just a command to act under (h).

NRDC's contrary argument makes no sense in context. Section 7 requires an agency to "insure" no likely jeopardy "unless such agency has been granted an exemption for such action by the Committee *pursuant to subsection (h)* of this section." 16 U.S.C. § 1536(a)(2) (emphasis added). It says nothing about exemptions under "subsection (j)." By NRDC's logic, then, an exemption granted after national security findings would be "pursuant to subsection (j)" not subsection (h), and therefore would not exempt an agency from the core of mandate of Section 7, but would be nugatory. That "surplusage" is too strange to seriously countenance. *NAM*, 583 U.S. at 128.

NRDC's construction also defies common sense. Under NRDC's argument, direct review, consolidation, and a 90-day statute of repose would apply to all Committee exemption decisions *except* the most important ones—exemptions that the Secretary of War first finds necessary for reasons of national security. Despite Congress providing an expedited process for such exemptions, which the Committee "shall" grant, 16 U.S.C. § 1536(j), those decisions would then be subject to

sprawling district court lawsuits without a statute of repose. That reading of a "notwithstanding" provision meant to streamline Committee exemptions makes no sense. This Court should not indulge NRDC's misreading by staying this litigation.

To the extent NRDC raises a colorable question about this Court's jurisdiction, however, a motions or merits panel of this Court could put that doubt to rest by confirming that this Court has subject-matter jurisdiction under 16 U.S.C. § 1536(h) or dismissing the petitions for review. That would conserve more judicial resources than NRDC's proposal of waiting for a district court to decide whether *this Court* has jurisdiction.

Notably, instead of moving to stay, NRDC could have also intervened as respondent and moved to dismiss the petitions if it really believed its own argument. *NAM*, 583 U.S. at 120 ("NAM intentionally did not file a protective petition in any court of appeals …. Instead, NAM intervened as a respondent … and … moved to dismiss for lack of jurisdiction."). It did not, because that would defeat its forum-shopping strategy.

## C.    A Stay Would Not Conserve Resources

NRDC's claim that a stay would conserve resources is also unpersuasive. This Court has an independent duty to determine whether it has subject-matter jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The judges of this

Court take that duty seriously. This Court must therefore decide whether it has subject-matter jurisdiction over the petitions for review, regardless of what happens in a district court in D.C.

The district court's decision will not change the need to address jurisdiction. AEA has no intention of dismissing its petition, so this Court will have to decide whether it has subject-matter jurisdiction under 16 U.S.C. § 1536(h) regardless. Further, other conservation groups would press the same merits challenges as NRDC, so no resources would be saved. Quite the opposite: condoning NRDC's attempt to evade the direct review scheme, by waiting to see if its district court gambit succeeds, would invite other litigants to engage in wasteful parallel district court litigation and appeals that could drag on for years just to forum shop, precisely what Congress sought to avoid by requiring exclusive, consolidated, and direct review, subject to short statute of repose.

NRDC complains that "[t]he federal government could easily avoid the 'duplicative briefing' and 'competing schedules' of which it complains … by agreeing to stay briefing on venue in one case pending resolution of briefing on venue in the other, as litigants and courts routinely do." NRDC's Mot. at 9. True, but if anything, NRDC gets it backwards: the district court case should be stayed. AEA is unaware of any case where *a circuit court* has waited for *a district court* to decide a

*circuit court's* jurisdiction. *See NAM*, 583 U.S. at 119–20 (discussing multiple challenges to Clean Water Act rule proceeding in both district and circuit courts until Supreme Court determined jurisdiction). That inverts the hierarchy of federal courts. This Court can authoritatively resolve all jurisdictional and merits questions in the next few months. By contrast, as NRDC explains, its district court lawsuit is at the motion to dismiss stage, subject to further litigation, and an appeal that could drag on for years, precisely what Congress sought to avoid. *See* 16 U.S.C. § 1536(n).

## II.     The Court May Not Dismiss With a Right to Reinstate

Last, NRDC requests dismissal without prejudice under Fifth Circuit Rule 42.4. That rule provides:

> In acting on a motion … to stay further proceedings, the clerk may enter such appeals or agency review proceedings as dismissed without prejudice to the right of reinstatement of the appeal within 180 days from the date of dismissal.

As evident from the first clause of the local rule, such a dismissal order is only allowed as a complementary remedy when a stay is warranted, but here, no stay is warranted. *See supra* Part I. Further, this rule should *never* be applied in consolidated review proceedings where a petitioner, such as AEA, objects to dismissal. AEA is "entitled to judicial review," 5 U.S.C. § 702, and that right is not defeasible by a co-

19

petitioner or "the clerk," 5th Cir. R. 42.4. Dismissal would work enormous prejudice on AEA.[4]

Further, applying that rule here would allow NRDC to evade the mandatory statute of repose. The statute cuts off challenges to those filed "within 90 days after the date of issuance of the decision." 16 U.S.C. § 1536(n). That deadline expires on July 2, 2026, so dismissal with a right to reinstatement "within 180 days" would evade the mandatory filing window. That is unlawful. "A statute of repose … puts an outer limit on the right to bring a civil action." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014). It is an "absolute bar," *id.* (cleaned up), and therefore is not subject, for example, to "equitable tolling," *id.* at 9–10. Similarly, this absolute bar on petitions for review cannot be evaded under a local rule allowing for "reinstatement" of a petition for review after the filing deadline expires. *Cf. Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 911 (D.C. Cir. 1985).

There is an easier, lawful solution. NRDC's district court lawsuit is subject to a six-year statute of limitations. 28 U.S.C. § 2401(a); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 806 (2024). If NRDC cares about

---

[4] NRDC doesn't explain whether it seeks to dismiss only its own petition or all petitions under Rule 42.4. In any event, the request should be denied, because dismissing NRDC's petition alone with a right to reinstate would be inefficient and defy the required consolidation of proceedings.

conserving judicial resources, it could voluntarily dismiss its district court action without prejudice, and file again later, after this litigation. Fed. R. Civ. P. 41(a)(1)(A)(i). NRDC won't do that, because it is not interesting in conserving resources, but in forum shopping.

## CONCLUSION

For the foregoing reasons, the Court should deny NRDC's motion to stay or dismiss without prejudice.

June 23, 2026

Respectfully submitted,

/s/ James R. Conde
James R. Conde
 *Counsel of Record*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620
jconde@boydengray.com

*Counsel for Petitioner*
*American Energy Association*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF. All parties in this case are represented by counsel consenting to electronic service.

June 23, 2026

Respectfully submitted,

/s/ James R. Conde
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620

*Counsel for Petitioner*
*American Energy Association*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this opposition complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) and Fifth Circuit Rule 27.4 because it contains 4,504 words, excluding the portions exempted by Federal Rule of Appellate Procedure 27(a)(2)(B) and the items listed in Rule 32(f).

This opposition complies with the typeface and type style requirements of Federal Rule of Appellate Procedure Rule 27(d)(1)(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Equity A and 14-point font.

June 23, 2026

Respectfully submitted,

/s/ James R. Conde
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620

*Counsel for Petitioner*
*American Energy Association*