**No. 26-60240**

# In the United States Court of Appeals For the Fifth Circuit

**AMERICAN ENERGY ASSOCIATION,**
*Petitioner*,

**v.**

**DOUG BURGUM, Secretary of the Interior, in his official capacities as Chair and Member of the Endangered Species Committee; BROOKE ROLLINS, Secretary of Agriculture, in her official capacity as a Member of the Endangered Species Committee; DANIEL DRISCOLL, Secretary of the Army, in his official capacity as a Member of the Endangered Species Committee; PIERRE YARED, Acting Chair of the Council of Economic Advisers, in his official capacity as a Member of the Endangered Species Committee; LEE ZELDIN, Administrator of the Environmental Protection Agency, in his official capacity as a Member of the Endangered Species Committee; NEIL JACOBS, Administrator of the National Oceanic and Atmospheric Administration, in his official capacity as a Member of the Endangered Species Committee; PETE HEGSETH, Secretary, U.S. Department of Defense,**
*Respondents*.

On Petitions for Review of an Order of the Endangered Species Committee

## REPLY BRIEF FOR PETITIONER AMERICAN ENERGY ASSOCIATION

Michael Buschbacher
James R. Conde
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620

# CERTIFICATE OF INTERESTED PERSONS

***American Energy Association, et al. v. Doug Burgum, et al.***
No. 26-60240

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Petitioners**

American Energy Association[1]

Natural Resources Defense Council, Incorporated

Defenders of Wildlife

National Wildlife Federation

National Parks Conservation Association

Florida Wildlife Federation

Louisiana Wildlife Federation

Texas Conservation Alliance

[1] American Energy Association is the sole petitioner remaining in this case. On June 30, 2026, the Court granted the other Petitioners' voluntary motions to dismiss with prejudice. Dkts. 90, 92.

**Respondents and Respondent-Intervenors**

American Petroleum Institute

Doug Burgum, Secretary of the Interior, in his official capacities as Chair and Member of the Endangered Species Committee

Brooke Rollins, Secretary of Agriculture, in her official capacity as a Member of the Endangered Species Committee

Daniel Driscoll, Secretary of the Army, in his official capacity as a Member of the Endangered Species Committee

Pierre Yared, Acting Chair of the Council of Economic Advisers, in his official capacity as a Member of the Endangered Species Committee

Lee Zeldin, Administrator of the Environmental Protection Agency, in his official capacity as a Member of the Endangered Species Committee

Neil Jacobs, Administrator of the National Oceanic and Atmospheric Administration, in his official capacity as a Member of the Endangered Species Committee

Pete Hegseth, Secretary, U.S. Department of War

**Attorneys**

Michael Buschbacher, Boyden Gray PLLC

James R. Conde, Boyden Gray PLLC

Jason T. Morgan, Stoel Rives LLP

Tiffany Wang, Stoel Rives LLP

Ryan P. Steen, Stoel Rives LLP

Katherine Desormeau, Natural Resources Defense Council

Jane P. Davenport, Defenders of Wildlife

Joseph M. Manning, Defenders of Wildlife

Catherine Wannamaker, Southern Environmental Law Center

Christopher Anderson, U.S. Department of Justice

Dimple Chaudhary, U.S. Department of Justice

Robert Nolan Stander, U.S. Department of Justice

In accordance with Federal Rule of Appellate Procedure 26.1, Petitioner American Energy Association discloses that it is a 501(c)(6) organization that has no parent corporation, and there is no publicly held corporation that owns ten percent (10%) or more of American Energy Association.

September 24, 2026

Respectfully submitted,

/s/ James R. Conde
James R. Conde

*Counsel for Petitioner*
*American Energy Association*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................i

TABLE OF CONTENTS ......................................................................iv

TABLE OF AUTHORITIES ....................................................................v

INTRODUCTION ..................................................................................1

ARGUMENT.........................................................................................1

I. The Parties Agree on Several Material Issues ....................................1

II. The Order Is Arbitrary......................................................................2

A. The Order Exempts Multiple Actions, Not One .......................3

B. The Committee's Order Is Substantive ..................................10

C. The National Security Findings Are Irrelevant ....................... 13

D. API's Additional Arguments Are Not Before the Court or Lack Merit ........................................................................ 16

CONCLUSION.................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apter v. Dep't of Health & Hum. Servs.*,
80 F.4th 579 (5th Cir. 2023) .......... 11

*Ballou v. Kemp*,
92 F.2d 556 (D.C. Cir. 1937) .......... 12

*Clark v. Sweeney*,
607 U.S. 7 (2025) .......... 17

*Columbia Broad. Sys. v. United States*,
316 U.S. 407 (1942) .......... 11

*Dep't of Navy v. Egan*,
484 U.S. 518 (1988) .......... 16

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) .......... 17

*Entergy Corp. v. Riverkeeper, Inc.*,
556 U.S. 208 (2009) .......... 8

*EPA v. Calumet Shreveport Ref., LLC*,
605 U.S. 627 (2025) .......... 4, 9

*Otay Mesa Prop., L.P. v. U.S. Dep't of Interior*,
646 F.3d 914 (D.C. Cir. 2011) .......... 6

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015) .......... 11

*Vericool World, LLC v. Igloo Prods. Corp.*,
175 F.4th 1045 (9th Cir. 2026) .......... 9

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 6

**Statutes**

16 U.S.C. § 1362(13) .......... 6

16 U.S.C. § 1372(a) .......... 6

16 U.S.C. § 1536(a)(2) .......... 5

16 U.S.C. § 1536(h)(1)(B) .......... 5, 6, 8, 10

16 U.S.C. § 1536(n) .......... 1

16 U.S.C. § 1536(o)(1) .......... 5

28 U.S.C. § 2112 .......... 1

**Regulations**

50 C.F.R. § 402.02 .......... 4, 10

50 C.F.R. § 453.03(b) .......... 12

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .......... 11

Black's Law Dictionary (5th ed. 1979) .......... 5

Philip Hamburger, *Is Administrative Law Unlawful?* (2014) .......... 8

## INTRODUCTION

The dispute between Petitioner American Energy Association ("AEA"), the Endangered Species Committee, and Respondent-Intervenor American Petroleum Institute ("API") comes down to this: is the Committee's written decision and "order," commanding that mitigation measures "shall continue to be implemented under this Order," 91 Fed. Reg. 16,966, 16,966–67 (Apr. 3, 2026), JA002–03, an inkblot signifying nothing, as the Committee now claims? Federal Respondents' Br. 28–30. Or is it an exercise of the Committee's substantive authority to require mitigation measures as a condition of the exemption?

Because the answer is the latter, AEA's petition must be granted.

## ARGUMENT

### I. The Parties Agree on Several Material Issues

The parties agree on many of the legal issues presented, including questions of jurisdiction and remedy. Specifically, the parties agree that:

- AEA has Article III standing. AEA Opening Br. 35–40; Federal Respondents' Br. 18 n.6; API Br. 9 n.5.
- This Court has exclusive subject-matter jurisdiction under section 7(n) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(n), and 28 U.S.C.

§ 2112. AEA Opening Br. 29–35; Federal Respondents' Br. 18–24; *see also* API Br. 9–14.

- Venue is proper. AEA Opening Br. 1; Federal Respondents' Br. 23–24.
- The Committee had a non-discretionary duty to grant an ESA exemption for the Gulf of America oil and gas program. AEA Opening Br. 42–43; Federal Respondents' Br. 27–28; API Br. 16–17.
- The Committee's order does not require the Department of Interior to implement the purported "reasonable and prudent alternative" suggested by the National Marine Fisheries Service ("NMFS") in the 2025 biological opinion. AEA Opening Br. 47 n.7; Federal Respondents' Br. 26 n.7; API Br. 25–26.
- Full vacatur of the exemption is unwarranted. AEA Opening Br. 48–52; Federal Respondents' Br. 37–39; API Br. 26–30.

Because the parties agree on these central questions, the reply brief does not further address them.

## II. The Order Is Arbitrary

The parties' central disagreement is narrow. It has nothing to do with the Secretary of War's national security findings about the need for an exemption for the Gulf of America oil and gas program. *Contra* Federal Respondents' Br. 31–37. AEA

fully agrees with the Secretary's conclusion. Instead, the disagreement centers on whether the Committee's "order," providing that specific mitigation measures nevertheless "shall continue to be implemented under this Order" by the Department of Interior, 91 Fed. Reg. at 16,966–67, JA002–03, is a meaningless inkblot, as the Committee and API assert, or a substantive condition on the exemption, as AEA contends.

The Committee's argument that the order is an inkblot turns primarily on its characterization of the programmatic exemption for the Gulf of America program as exempting a single "agency action." In this view, it seems, every part of the Department of Interior's program composes a single "action" that is essential to the exemption. If the Department fails to carry out even a single part of this supposed "action," including the mitigation measures, the exemption would be inapplicable because the action would be "different" and would "eliminate mitigation measures." Federal Respondents' Br. 27–28.

The Committee's characterization of the exemption is wrong, so the Committee is wrong.

### A. The Order Exempts Multiple Actions, Not One

The Committee observes that the "relevant unit of analysis for section 7 is the agency 'action.'" Federal Respondents' Br. 25. True enough. But the Committee

overlooks that this case does not involve an exemption for a single agency "action." The Department of Interior here engaged in a "programmatic consultation"—"a consultation addressing an agency's *multiple actions* on a program … basis." 50 C.F.R. § 402.02 (emphasis added); Federal Respondents' Br. 8. The programmatic consultation for the Gulf of America included literally thousands of proposed actions, including oil and gas leases, pipeline permits, mitigation measures, and so on. AEA Opening Br. 11, 17–18. Each lease, license, or mitigation measure is an "action" that can separately violate the ESA. *See* 50 C.F.R. § 402.02 ("action" means "the granting of licenses, contracts, leases, easements, rights-of-way, permits, or grants-in-aid" as well as "actions intended to conserve listed species"). Indeed, the Department of Interior used to consult "on a lease-sale-by-lease-sale basis." Federal Respondents' Br. 7.

The "actions" covered by the program refer "to particular exercises of [Department of Interior] authority" under many different statutory provisions, not to a single action. *EPA v. Calumet Shreveport Ref., LLC*, 605 U.S. 627, 637 (2025). So, despite the Committee's framing of this case as involving an exemption for a singular "action," the Committee did not in fact exempt a single "action," but "multiple actions." 50 C.F.R. § 402.02. The Committee, not AEA, therefore "misunderstands the nature of the Committee's action." Federal Respondents' Br.

27. The exemption covers one program, to be sure, but the program includes thousands of discrete actions, not one agency action, as the Committee's brief asserts.

Once the programmatic exemption is rightly understood as exempting multiple actions, not just one, the Committee's argument falls apart. An exemption under section 7(h) relieves the Department of Interior of any obligation to consult for *any* of those agency actions, and it relieves the Department of Interior and private parties of liability for any "taking" of a listed species resulting from "any action" that is part of the exempted program. 16 U.S.C. § 1536(a)(2), (o)(1). An "exemption" means "freedom from a general duty or service" or "immunity from certain legal obligations." *Exemption*, Black's Law Dictionary 513 (5th ed. 1979). Here, this means that in the absence of a Committee order conditioning the exemption with "reasonable mitigation and enhancement measures" that are "necessary and appropriate," 16 U.S.C. § 1536(h)(1)(B), the Department of Interior is free to do all of the actions exempted by the Committee, or none of them, without consulting or risking liability for a take under section 9. That includes the proposed mitigation measures.[2]

---

[2] Of course, the Department of Interior still has obligations under many other laws that may require mitigation. For example, the Marine Mammal Protection Act

(*footnote continued on next page*)

An illustrative example might help. Suppose an action agency sought a programmatic section 7(a)(2) consultation for two actions: (1) an action authorizing a utility's dam project that would kill a listed subspecies of freshwater shrimp,[3] and, relatedly, (2) an action spending public money to fund a multi-billion-dollar conservation effort to acquire habitat and transplant the shrimp population to a new stream in an effort to avoid jeopardy to the listed species. If the Committee later granted an exemption for the whole program, that would mean that the action agency no longer needs to bother with the freshwater shrimp conservation effort to avoid an ESA violation. Unless, of course, the Committee "establishes" measures of "transplantation" and "habitat acquisition" as a condition of the exemption. 16 U.S.C. § 1536(h)(1)(B). This wouldn't change just because the action agency used the singular term "action" as a shorthand to describe a program composed of two separate actions. Agencies cannot turn off legal obligations through the use of labels or misplaced singulars.

imposes numerous general duties to protect marine mammals. 16 U.S.C. §§ 1362(13), 1372(a). The Secretary of War has not granted an exemption from this statute. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 15 (2008).

[3] Some minuscule freshwater shrimp, such as the "fairy shrimp," are listed species. *See Otay Mesa Prop., L.P. v. U.S. Dep't of Interior*, 646 F.3d 914, 916 (D.C. Cir. 2011).

Turning off that legal obligation is precisely what the Committee attempts to do here. The Committee frames the thousands of exempted actions as a single "action." With that unitary gestalt framing of the programmatic exemption in hand, the Committee can then counterintuitively claim that the mitigation measures are necessarily a condition of the exemption because the Committee lacked authority to "grant an exemption broader (or narrower) than the Secretary of War found to be necessary." Federal Respondents' Br. 25.

This argument should not be mistaken for administrative self-abnegation: the Committee is claiming vast authority for federal agencies to skirt the ESA's legal requirements by simply reframing multiple independent actions as one integrated whole. The Committee's glib observation that the Department of Interior can of course always approve "activities" in the Gulf "that do not include the mitigation measures, *provided* that Interior complies with the ESA," confirms that in the Committee's view, the mitigation measures are a necessary condition of the ESA exemption. Respondents' Br. 29 (emphasis added). That is so, the Committee argues, even though the Committee claims that it never formally imposed these conditions by order.

The Committee's "whole program" approach to the programmatic exemption would therefore allow federal agencies to effectively condition a

programmatic exemption with burdensome "mitigation" measures that are not "reasonable" or "necessary and appropriate," 16 U.S.C. § 1536(h)(1)(B), and force industry to "spend billions to save one more fish or plankton," defying the statutory limits that Congress imposed on exemption conditions. *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 232–33 (2009) (Breyer, J., concurring in part and dissenting in part).

Or to use API's words, federal agencies could "bake[]" needless "mitigation and enhancement measures" into the exemption through a self-serving "definition" of their own action. API Br. 18–19. As API agrees, that is precisely what the Committee is attempting here. *Id.* at 19–20. Administrative licensing is uniquely subject to agency abuse. *See* Philip Hamburger, *Is Administrative Law Unlawful?* 259 (2014) (noting that administrative licensing "is an unusually dangerous sort of extralegal adjudication"). That is why Congress placed guardrails on the exemption process. *E.g.*, 16 U.S.C. § 1536(h)(1)(B). The Court should not condone the government's attempt to evade those statutory limits through labels or misplaced singulars.

The federal government's argument in this case is similar to its failed attempt in *Calumet* to repackage multiple EPA agency actions as a single "omnibus" action to pick its preferred venue, except that here, the Committee presents the false unity

of particulars to avoid statutory constraints entirely. *Calumet Shreveport Ref.*, 605 U.S. at 637–40. As in *Calumet*, the government's "position that it can control the unit of 'action' … lacks any statutory limiting principle," and would allow federal agencies free rein to condition ESA exemptions with unnecessary mitigation measures free from statutory constraints. *Id.* at 640. The Court should not "permit such gamesmanship" by federal agencies. *Id.* Programmatic consultations are useful for the Department of Interior to "manage its internal affairs." *Id.* But they do not change the law or the facts, nor do they transform thousands of agency actions into one sprawling administrative rhizome.

Rejecting the Committee's characterization of the exempted actions will also promote legal clarity in ESA exemptions. The Committee's unitary gestalt approach to the programmatic exemption raises a "Ship of Theseus" problem: in its view changing a single one of the mitigation measures may result in a "different," unlicensed action. *Cf. Vericool World, LLC v. Igloo Prods. Corp.*, 175 F.4th 1045, 1061 (9th Cir. 2026) (Bumatay, J., dissenting) (recounting the "Ship of Theseus" paradox). Just as the Ship of Theseus has "vexed philosophers, physicists, and poets for millennia," *id.*, the Committee's view of a programmatic exemption would vex judges, regulators, and the public. If even one mitigation measure is modified, is the program now a different "action," requiring a new formal consultation and

biological opinion? What if the Department decides to no longer approve certain leases? Is that a different action as well? "Thankfully," the courts need not confront "this age-old question," *id.* at 1062, because the exemption is properly understood as exempting "multiple actions," not one. 50 C.F.R. § 402.02. And an exemption means that *none* of those actions are necessary under the ESA, including mitigation, except when the Committee conditions the exemption under section 7(h)(1)(B). 16 U.S.C. § 1536(h)(1)(B).

### B. The Committee's Order Is Substantive

Once the programmatic exemption is properly understood as involving multiple actions, not a single action, the smog lifts. The next question is simply whether the Committee's order imposes a substantive condition on the exemption requiring the mitigation measures. If it does, then the Committee concedes that the order is arbitrary, Federal Respondents' Br. 30, and not harmless error, *id.* at 37 n.8. If the order is an inkblot, as the Department now contends, however, then the Court should say so, confirm that the Department of Interior is not required to maintain the mitigation measures as a condition of the exemption, and deny AEA's petition for review.

As is often the case when agencies want to avoid judicial review of binding orders, the Committee's counsel now claims that its "order" is merely a

"statement," not a binding order. As the Committee puts it, the order "merely observes that the action to be exempted … includes the mitigation measures." *Id.* at 28. The Committee's counsel claims that the order "was not a finding that those measures would be required by section 7(h)(1)(B), nor was it an order issued under the Committee's authority that those measures be observed." *Id.* at 30. It was just a mere "observation." *Id.* at 29. In this view, the written decision and "order" is "no more reviewable than a press release." *Columbia Broad. Sys. v. United States*, 316 U.S. 407, 422 (1942).

This is not the best reading of the Committee's written decision and order. "[A]n agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding, or is applied by the agency in a way that indicates it is binding." *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015). Here, the decision, on its face, "contains imperative elements that go beyond mere factual communication." *Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 591 (5th Cir. 2023). The written decision prescribes a policy: the specific mitigation measures "*shall* continue to be implemented *under this Order*." 91 Fed. Reg. at 16,966, JA002 (emphasis added). "Shall" means "must," not "may," except in the rarest of circumstances. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 114 (2012) ("[W]hen the word *shall* can reasonably be

read as mandatory, it ought to be so read."); *Ballou v. Kemp*, 92 F.2d 556, 559 (D.C. Cir. 1937). And "*under this Order*" reflects the Committee's understanding that the order itself imposes the obligation.

Here, context supports the view that the Committee meant this statement to bind the public. The Committee backs the command in the written decision with an "order" that expressly references "the avoidance or minimization measures." 91 Fed. Reg. at 16,967, JA003. That is consistent with how the Committee's regulations direct the Committee to impose binding requirements. The Committee's "final determinations" to grant exemptions must be documented in a "written decision," the Committee may include a separate order "specifying required mitigation and enhancement measures," if any, and it must publish both "its decision and order in the Federal Register as soon as practicable." 50 C.F.R. § 453.03(b). If the mitigation measures were not "required" by the Committee, *id.*, there would be no need for this separate "order," or for the Committee's use of the imperative. Agencies don't use orders and imperative language to make "observations." They use them to impose binding constraints.

The Committee's counsel emphasizes the Committee's statement that it was not *legally required* to impose mitigation measures under section 7(h)(1)(B) to claim that the Committee didn't do so. Federal Respondents' Br. 30. That is a category

error: didn't have to doesn't mean didn't do so. What matters more here is the text that immediately follows: the Committee went on to say that "even if the requirement applied"—i.e., even if the Committee were required to impose mitigation measures on the exemption under section 7(h)(1)(B)—the requirement "would be satisfied here" based on the mitigation measures included in the proposed action. 91 Fed. Reg. at 16,966–67, JA002–03. But the only way for the Committee to satisfy *the Committee's obligation* to impose mitigation measures under section 7(h)(1)(B) would be for the Committee to actually mandate the mitigation measures by order, as a condition of the exemption. This confirms that the Committee meant what it said and said what it meant.

The order is not an inkblot. It is a substantive order. And it is concededly arbitrary.

### C. The National Security Findings Are Irrelevant

The Committee also tries to evade judicial review by claiming that AEA seeks to "set aside the National Security Finding insofar as it defines the action to be exempted to include the mitigation measures." Federal Respondents' Br. 31. The Committee argues that AEA cannot seek judicial review of the Secretary's findings because they are committed to agency discretion by law, or else that AEA's challenge

fails because the Secretary's national security findings are owed "heightened deference." *Id.* at 31–37.

AEA takes no issue with the Secretary of War's national security findings. The Secretary of War found that an exemption for the Gulf of America oil and gas program "is necessary for reasons of national security." *See* Secretary of War Letter, Attachment, Nat'l Security Findings ¶ 103, JA043. AEA fully agrees. AEA disagrees only with *the Committee's* later and separate decision to require the mitigation measures as a condition of the exemption requested by the Secretary, a decision that has nothing to do with national security.

The Committee cannot shift blame to the Secretary of War because the Secretary did not compel the Committee to order mitigation. The only part of the Secretary's finding that is even arguably relevant is paragraph 102. That paragraph provides in full:

> [P]rotected species will continue receiving appropriate protections because the underlying agency action includes those mitigation and protection measures that [the action agencies] identified as necessary when developing the proposed action that is the subject of this determination. Exempting the agency action now will not materially increase the risk to protected species. And, in any event, an exemption is necessary for reasons of national security.

*Id.* ¶ 102, JA043.

Nothing in this "finding" required the Committee to condition the exemption on continued implementation of these mitigation measures. The Secretary of War mentioned the existing measures only to explain why "[e]xempting the agency action now will not materially increase the risk to protected species." *Id.* That is, there would be no material risk increase because an exemption doesn't *compel* the Department of Interior to abandon the mitigation measures. Regardless, the Secretary of War immediately went on to find that "in any event, an exemption is necessary for reasons of national security." *Id.* The phrase "in any event" means that national security requires an exemption freeing Gulf oil and gas activities from ESA requirements even if that results in a materially increased risk of harm to protected species. A simple exemption would thus have fully aligned with the national security finding; the Secretary called for an exemption even if it meant those measures wouldn't be preserved by a programmatic exemption. In contrast, the conditional exemption the Committee granted does *not* exempt activities if existing wildlife protections end. So, it doesn't fully align with the findings.

Although the relevance of the national security findings is not readily apparent, the Committee's counsel appears to be suggesting that the Court must defer to its mischaracterization of the programmatic exemption as a single integrated action because the Secretary of War also used the singular term "action" to describe

the program. Federal Respondents' Br. 35. But the Secretary of War's use of the singular term "action" is not a "national security finding" about the need for an exemption. It is at most an incorrect legal characterization or a shorthand for the program. Even if the Secretary of War shared the Committee's misunderstanding of a programmatic exemption as covering only a single action, disagreeing with that mistaken legal characterization doesn't require "second-guessing" the Secretary of War's determination that an exemption is necessary. *Dep't of Navy v. Egan*, 484 U.S. 518, 531 (1988). AEA supports that exemption, and doesn't challenge it. AEA challenges only the Committee's mitigation order. Accordingly, the national security findings are irrelevant to AEA's petition, and the Committee's reliance upon them is misplaced.

**D. API's Additional Arguments Are Not Before the Court or Lack Merit**

API raises two additional arguments in defense of the order, but they are meritless or cut the other way.

API's lead argument is that the Committee "has no such authority" to require mitigation measures following a section 7(j) national security finding by the Secretary of War. API Br. 14–17. "The order is not arbitrary because it is contrary to law" is a strange argument for a respondent-intervenor to make. It is not a defense of the order at all, but at most an additional reason for partial vacatur of the order. Because no

proper petitioner challenging the order argues that the Committee lacked statutory discretion to impose mitigation measures following a national security finding, however, the argument is not properly before the Court and should not be passed upon. *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (per curiam). A holding that the order is arbitrary would not "erroneously presume[]" that the order requiring mitigation is authorized by statute. API Br. 14. It would simply leave the issue of the Committee's statutory authority to impose mitigation measures for a different day, following the principles of party presentation. *See, e.g.*, *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 25 (2020) (because of party presentation "we do not evaluate … the illegality conclusion").

API also claims that the arbitrary order satisfies the very high bar for harmless error under the Administrative Procedure Act ("APA") and does not require a further remand. API Br. 24–26. But the Committee concedes that the error is not harmless under the APA. Federal Respondents' Br. 37 n.8. AEA has already explained in detail why the error is prejudicial and why this case fits squarely within the APA's ordinary remand rule. AEA Opening Br. 47–48. The Committee concedes that its entire failure to consider the cost of the mitigation measures is prejudicial, Federal Respondents' Br. 37 n.8, and API's contrary argument lacks merit, and requires no additional response.

## **CONCLUSION**

For the foregoing reasons, the Court should grant AEA's petition, declare the order requiring mitigation measures severable from the exemption decision, and vacate the order. In the alternative, the Court should remand without vacatur and retain jurisdiction to enforce its mandate.

September 24, 2026

Respectfully submitted,

/s/ James R. Conde
Michael Buschbacher
James R. Conde
*Counsel of Record*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620
jconde@boydengray.com

*Counsel for Petitioner American Energy Association*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF. All parties in this case are represented by counsel consenting to electronic service. Pursuant to 5th Cir. R. 31.1, the parties have agreed to waive paper service.

September 24, 2026

Respectfully submitted,

/s/ James R. Conde
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620

*Counsel for Petitioner*
*American Energy Association*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this reply complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) and Fifth Circuit Rule 32.2 because it contains 3,718 words, excluding the portions listed in Federal Rule of Appellate Procedure 32(f).

This reply complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Fifth Circuit Rule 32.1 because it has been prepared in a proportionally spaced typeface using Microsoft Word in Equity A and 14-point font.

September 24, 2026

Respectfully submitted,

/s/ James R. Conde
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620

*Counsel for Petitioner*
*American Energy Association*